UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VETON GJOLIKU,

    Petitioner,

v.

Case No. 1:06-CV-458
Hon. Gordon J. Quist

MICHAEL CHERTOFF,
et al.,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner is currently detained in the Calhoun County Jail pending his removal from the United States. He contends that he is being detained illegally and has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. This matter is now before the court on the parties' cross-motions for summary judgment (docket nos. 19 and 22).

**Background**[1]

Petitioner is a citizen of Albania. He entered the United States with a B-2 visitor visa with authorization to remain in the United States until February 25, 1999. Petition at ¶ 14.

Shortly before his visa expired (February 2, 1999) petitioner applied for asylum in the United States. *Id.* at ¶ 15.

He purchased a condominium in Sterling Heights, Michigan on or about April 20,

---

[1] Neither party has provided the court with an administrative record of petitioner's immigration proceedings. For purposes of this report and recommendation, the court will rely upon the uncontested allegations as set forth in the petition and the supporting documents filed by the parties. In addition, the court takes judicial notice of matters contained in the docket sheets of the Second Circuit Court of Appeals.

2000. *See* Title Insurance Policy attached to petition as Exh. 1. Petitioner filed an individual income tax return in 2003 listing his address as 8260 Crestview #3, Sterling Heights, MI, and claiming his mother as a dependent. *See* Income Tax returns attached to petition as Exh. H.

Petitioner's application for asylum was denied by an Immigration Judge (IJ) on January 15, 2004 and he was ordered to be removed from the United States. Petition at ¶ 16; Declaration of James Jacobs at ¶ 2, attached to respondent's motion for summary judgment as Exh. A. The Board of Immigration Appeals (BIA) denied his appeal on June 9, 2005. *Id.*

Petitioner married a United States citizen on July 1, 2005. *Id.* at ¶ 17; Marriage certificate attached to petition as Exh. A. On July 8, 2005, petitioner's wife filed an I-130 petition to sponsor alien relative, which was pending at the time he filed this petition. Petition at ¶ 17.[2]

Petitioner did not voluntarily report to authorities and was arrested by Fugitive Operations on August 4, 2005. Jacobs Decl. at ¶ 3. A travel document request was sent to the Embassy of Albania for petitioner on August 9, 2005. *Id.* at ¶ 4. A travel document issued from Albania with an expiration date of January 23, 2006. *Id.*

Petitioner filed a petition with the Second Circuit Court of Appeals to review the BIA denial. Petition at ¶ 18. *See Gjoliku v. Gonzales*, No. 05-4286 (2nd Cir.). Petitioner filed a motion to stay his removal on August 23, 2005. *Gjoliku v. Gonzales*, No. 05-4286 (2nd Cir.). On November 23, 2005, the court granted the government's motion to dismiss because the petition for review was not timely filed. *Id.* The court also denied petitioner's motion for stay as moot. *Id.*

---

[2] Petitioner has not provided the court with a copy of the I-130 petition or an update on the status of the petition.

On September 29, 2005, petitioner filed a petition for habeas corpus pursuant to § 2241 in the Federal Court for the Eastern District of Michigan. *Gjoliku v. Chertoff*, No. 05-60228 (E.D. Mich.).

The government completed a post-order custody review for petitioner in December 2005, which resulted in a determination that petitioner's removal was imminent. Jacobs Decl. at ¶ 5. In a letter to petitioner's counsel dated December 23, 2005, the Immigration and Customs Enforcement (ICE) decided to continue petitioner's detention, stating part as follows:

> You have been found removable and have been ordered removed from the United States. While it is true, that in the course of your federal litigation the 90-day and even the six-month post-removal order periods may expire, you have not been in detention during that period. Moreover, the law permits that period to reasonably extend beyond the six-month period. As noted above, the main purpose of § 1231(a)(6) is to have the alien present for removal. Since you have been in custody for just over One hundred and twenty (120) days - not even for the length of the presumptively reasonable six-month period - it is reasonable for the government to detain you pending your removal. It appears reasonably foreseeable that you will be removed to Albania, as the government has obtained travel documents. Indeed, the reason for your stay of removal was filed [sic] strongly indicates that your removal is only being prevented by issuance of an order of a stay. Thus, you have not met your burden of providing good reason to believe that you will not be removed in the reasonably foreseeable future.
>
> You may very well have established roots here in the United States. However, on January 15, 2004, an Immigration Judge denied your asylum claim and found you removable from the United States. On June 9, 2005, the Board of Immigration Appeals dismissed your appeal and subsequent to that the 2nd Cir. Court of Appeals denied your request to have your asylum reviewed. To date, you have exhausted all avenues of possible relief and yet you continue to prevent your removal through the federal court system thus extending your detention by the government.
>
> Accordingly, the Department of Homeland Security, Immigration and Customs Enforcement, has acted within their power to detain you pending your imminent removal from this country pursuant to a valid removal order.

ICE letter (12/23/05) attached to Jacobs Decl. as attachment 1.[3]

Petitioner filed a "Motion to Reopen," "Motion to Reissue BIA Decision," and "Motion to Stay removal pending BIA decision" with the BIA on November 4, 2005. Petition at ¶ 20. The motion to reopen was based in part on changed country conditions (i.e., a new regime in power) which placed petitioner in danger of persecution. *Id.* at 21. According to petitioner, the BIA did not evaluate the changed conditions in Albania because they occurred after the BIA denial of his asylum claim. *Id.*

On January 11, 2006, the Eastern District denied the first habeas petition for lack of jurisdiction. *Gjoliku v. Chertoff*, No. 05-60228, 2006 WL 83065 (E.D. Mich.).

On January 26, 2006, the government sent another request for travel documents to the Embassy in Albania. Jacobs Decl. at ¶ 6. A travel document was issued with an expiration date of April 16, 2006. *Id.*

The BIA denied petitioner's motion for a stay of removal on February 6, 2006, with the remaining motions still pending. Petition at ¶ 22.

Petitioner filed a petition to review the February 2006 order of the BIA, along with a motion to stay his removal, in the Second Circuit Court of Appeals on February 21, 2006. *See Gjoliku v. Gonzales*, No. 06-0777 (2nd Cir.).

The government obtained a one-way airline ticket to Albania for petitioner, which was scheduled to leave Detroit on March 2, 2006. Copy of itinerary attached to Jacobs Decl. as Attachment 2. However, the tickets were not used because petitioner obtained a temporary order

---

[3] The second page of this letter is signed and dated "12/23/05." The first page of this letter is inexplicably dated November 1, 2005.

staying his removal on that date.  Jacobs Declaration at ¶ 7; *Gjoliku*, No. 06-0777 (2nd Cir.).

On March 9, 2006, the Second Circuit Court of Appeals granted petitioner's motion for a stay of appeal pending the disposition of his motions before the BIA.  *See* Order granting stay attached to petition as Exh. 1.  On that same date, petitioner's counsel sent a letter to ICE requesting his release from detention:

> As per [the March 9, 2006] court order, your agency is not authorized to remove Veton until his BIA asylum related motions and this Court of Appeals case are finalized.  This could take months or years to adjudicate.  We therefore request Veton's immediate release from detention; or release on bond while his asylum case is making its way through the judicial system.  There is no reason to keep Veton detained for months or years because he is not a flight risk and has no criminal record.  He has substantial property and family in the United States (documents establishing this have been submitted to your office a few months ago).  Veton has been in detention for over six months now.  This has been a horrible experience for him, his US citizen wife and family.  Furthermore, the lengthy detention has caused a significant emotional and psychological harm to both Veton and his wife as well as other damages.
>
> Veton Gjoliku has a serious fear of being persecuted in Albania because of recent changes in the country and other factors.  Your continued detention of Veton, could be illegal since he is not removable.  There is no reason for him to be in detention.  If you require additional information, please let me know.

Letter to ICE (3/9/06).

On April 11, 2006, petitioner filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the Federal Court for the Eastern District of Michigan.

On April 14, 2006, ICE performed a review of petitioner's custody status and entered a decision to continue his detention.  *See* Decision to continue detention (4/16/06) attached to Jacobs Decl. as Attachment 3.

Petitioner states that "[a]ll BIA motions were denied on May 1, 2006" in a "boilerplate denial, which ignored the evidence." Petitioner's summary judgment brief at 4.[4] The Second Circuit's order of stay expired on that date. *See Gjoliku*, No. 06-0777 (2nd Cir.).

Petitioner filed his third appeal with the Second Circuit on May 4, 2006. *See Gjoliku v. Gonzales*, No. 06-2132 (2nd Cir.). Petitioner also filed a motion for stay of removal or an extension of stay on May 15, 2006. *Id.* That motion remains pending as of the date of this report and recommendation.

The petition for habeas corpus was transferred to this court on June 29, 2006. Petitioner raises the following issues:

> Petitioner's further detention violates substantive due process.
>
> > A.  There is no significant likelihood that petitioner will be deported in the reasonably foreseeable future.
> >
> > B.  There is no evidence that petitioner poses a threat to the community or a risk of flight.

Petition at 7-10.

### I. Standard of Review

Petitioner seeks relief under 28 U.S.C. §2241, which authorizes federal district courts to grant writs of habeas corpus to prisoners "in custody." *See* 28 U.S.C. § 2241(c). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A petition for a writ of habeas corpus under § 2241 is appropriate for raising statutory and constitutional challenges to post-removal-period detention. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *Ly v. Hansen*, 351 F.3d 263, 266 (6th Cir. 2003).

---

[4] Petitioner has not provided a copy of this order to the court.

The parties have filed cross-motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

**II.     Discussion**

Petitioner contends that his detention is illegal because it violates his substantive due process rights as set forth in *Zadvydas*, in which the Supreme Court held that the indefinite detention of a removable criminal alien after a removal proceeding would violate a due process right under the Fifth Amendment. *See Zadvydas*, 533 U.S. at 682, 690; *Ly*, 351 F.3d at 267. To resolve petitioner's claim, the court needs to examine the detention statute and the caselaw regarding indefinite detentions.

### A. Section 1231

When the BIA issued is final order of removal on June 9, 2005, petitioner was subject to a mandatory 90-day detention period pursuant to 8 U.S.C. § 1231, which provides in pertinent part as follows:

(a) Detention, release, and removal of aliens ordered removed

(1) Removal period

    (A) In general

    Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

    (B) Beginning of period

    The removal period begins on the latest of the following:

    (i) The date the order of removal becomes administratively final.

    (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

    (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

    (C) Suspension of period

    The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

(2) Detention

During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien

>who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.
>
>(3) Supervision after 90-day period
>
>If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.

The government may detain certain aliens after the 90-day removal period pursuant to 8 U.S.C. § 1231(a)(6), which provides that:

>An alien ordered removed who is inadmissible under section 212 [8 U.S.C. § 1182], removable under section 237(a)(1)(C), 237(a)(2), or 237(a)(4) [8 U.S.C. § 1227(a)(1)(C), (a)(2), or (a)(4)] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

Neither party has provided the court with the IJ's decision setting for the basis for petitioner's removal and detention. The petition and briefs indicate that petitioner remained in the United States after the expiration of his visitor's visa and unsuccessfully sought asylum here. Based upon this factual scenario, it appears that petitioner falls within the class of deportable aliens that

violated his non-immigrant status or condition of entry pursuant 8 U.S.C. § 1227(a)(1)(C).[5] Accordingly, the government can detain petitioner beyond the 90-day removal period.

In *Zadvydas*, the Supreme Court determined that the government cannot detain an alien indefinitely pursuant to § 1231. The court "construed the IIRIRA [Illegal Immigration Reform Act of 1996] as not requiring indefinite incarceration, by imposing a reasonable time limit (six months), supervised by the federal courts in habeas proceedings, on the amount of time that a deportable criminal alien may be detained after a determination as to removability has been made, unless the government asserts a 'strong special justification' for the detention." *Ly*, 351 F.3d at 267, *citing Zadvydas*, 533 U.S. at 690. *Zadvydas* "stands for the proposition that detaining an alien requires more than the rationality of a general detention statute; any justification must go to the alien himself." *Demore v. Kim*, 538 U.S. 510, 552-553 (2003). After six months, "the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" *Clark v. Martinez*, 543 U.S. 371, 377-378 (2005), *citing Zadvydas*, 533 U.S. at 701.

---

[5] Section 1227(a)(1)(C) provides in pertinent part as follows:

(a) Classes of deportable alines. Any alien . . . in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:

(1)(C)   Violated nonimmigrant status or condition of entry.

(i) Nonimmigrant status violations. Any alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted or to which it was changed under section 248 [8 U.S.C. § 1258], or to comply with the conditions of any such status, is deportable.

(ii) Violators of conditions of entry. Any alien who the Secretary of Health and Human Services certifies has failed to comply with the terms, conditions, and controls that were imposed under section 212(g) [8 U.S.C. § 1182(g)] is deportable.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas,* 533 U.S. at 701.

The six-month presumptively reasonable detention period discussed in *Zadvydas* includes the 90-day mandatory detention under § 1231(a)(2). *See Ly*, 351 F.3d at 275 -276 ([t]he Supreme Court set a presumptive standard of 90 days and an outside limit of six months detention for aliens who have been ordered removed absent a showing of a "strong special justification" for detention); *Obikanye v. I.N.S.*, 78 Fed.Appx. 769, 771 (2nd Cir. 2003) ("*Zadvydas* established that detention is presumptively reasonable for six months after a removal order"); *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ( "[a]lthough not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter").

### B. Petitioner's initial 90-day removal period

The court agrees with the government that petitioner's 90-day removal period was suspended until May 1, 2006. The BIA issued its final order of removal on June 9, 2005. This is the date that petitioner's 90-day removal period and mandatory detention commenced pursuant to §§ 1231(a)(1), 1231(B)(i), and 1231(2). However, petitioner did not comply with the order and was arrested on August 2, 2005. Petitioner's failure to report was an act that prevented his removal pursuant to § 1231(a)(1)(C) resulted in a suspension of the 90-day mandatory detention period until the date of his arrest.

11

In addition, petitioner's 90-day detention period was suspended while he sought a stay of his removal. Petitioner filed two motions to stay his removal in the Second Circuit (August 23, 2005 and February 21, 2006) and one motion to stay his removal in the BIA (November 4, 2005). The Second Circuit's March 9, 2006 order stayed petitioner's removal until the BIA denied his motions on May 1, 2006.  The court agrees with the government that petitioner's filing of successive motions to stay his removal interrupted the running of the 90-day removal period. *Akinwale*, 287 F. 3d at 1052 n. 4.  In reaching this determination, the court has balanced petitioner's dilatory tactics against the constitutional requirement of reasonability:

> [C]ourts must be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration. Without consideration of the role of the alien in the delay, we would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay "unreasonable" and order their release.
>
> However, appeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that an alien has sought relief from deportation does not authorize [ICE] to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

*Ly*, 351 F.3d at 272.

Here, petitioner refused to voluntarily depart the country on June 9, 2005.  Once he was arrested, petitioner filed multiple motions to stay his removal and succeeded in obtaining two orders to stay his removal until May 1, 2006.  Petitioner filed another motion to stay his removal in a new appeal on May 15, 2006.  Based on this history, the court concludes that petitioner's 90-day

detention period has been suspended during his detention: from June 9, 2005 until his arrest on August 2, 2005; during the pendency of his first motion to stay his removal, i.e., from August 23, 2005 through November 23, 2005; during the pendency of his second motion to stay his removal, i.e., from November 4, 2005 through February 6, 2006; during his third motion to stay his removal, i.e., February 26, 2006 through May 1, 2006; and, during his fourth motion to stay removal, i.e., filed on May 15, 2006. Petitioner's failure to abide by the IJ's order and his seeking multiple motions to stay his removal, have resulted in the suspension of the 90-day detention period for all but 54 days of his detention.

Accordingly, the court concludes that petitioner's 90-day mandatory detention period has not run.

### C. Petitioner's continued detention is not unconstitutional

Even if the 90-day detention period was not suspended, petitioner has not demonstrated that his continued detention violates his due process rights as outlined in *Zadvydas*. Although petitioner has been detained for over one year, he has failed to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Unlike the aliens in *Zadvydas*, petitioner does not face "potentially permanent" confinement.[6] On the contrary, the government twice obtained travel authorization to

---

[6]*Zadvydas* involved two aliens with criminal records, Zadvydas and Ma, who faced "potentially permanent" civil confinement. *Zadvydas*, 533 U.S. at 684-86, 691. Zadvydas was apparently the child of Lithuanian parents and born in a displaced persons camp in Germany in 1948. *Id.* at 684. After his most recent conviction, he was released on parole, taken into INS custody and ordered deported to Germany in 1994. *Id.* However, neither Germany nor Lithuania would accept him. *Id.* Ma was born in Cambodia in 1977. *Id.* at 685. He was convicted of manslaughter, served two years in prison, and was released to INS custody. *Id.* When his 90-day removal period expired in 1999, the INS kept him in custody (in part due to his former gang membership and the nature of his crime). The lower court determined that there was no

Albania, and purchased airline tickets on one occasion. Furthermore, this is not a case where an alien has been detained for an unreasonable length of time awaiting a court to address his claims. *See, e.g.*, *Oyedeji v. Ashcroft*, 332 F. Supp. 2d 747 (M. D. Pa. 2004) (alien had been detained for more than four years based upon a forbearance policy of the Second Circuit Court of Appeals, by which the court obtains an agreement that ICE will not remove the alien from the United States until the court renders a decision on a motion for stay of removal).

### Recommendation

Accordingly, I respectfully recommend that petitioner's motion for summary judgment (docket no. 19) be **DENIED**, that respondents' motion for summary judgment (docket no. 22) be **GRANTED** and that the habeas petition be **DISMISSED**.


Dated:  September 25, 2006                /s/ Hugh W. Brenneman, Jr.
                                          Hugh W. Brenneman, Jr.
                                          United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

realistic chance that Cambodia would accept Ma, given the lack of a repatriation agreement between Cambodia and the United States. *Id.* at 686.